1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
BRITTANY N. DEJONG (258766)
dejong@whafh.com
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:   619/234-4599

*Counsel for Plaintiffs and the [Proposed] Class*

[Additional Counsel Appear on Signature Page]

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| ANDREW SCHWARTZ, Individually and on Behalf of All Others Similarly Situated, | ) Case No.: |
| | ) |
| | ) **COMPLAINT FOR BREACH OF** |
| | ) **EXPRESS WARRANTY AND** |
| Plaintiffs, | ) **VIOLATION OF THE ILLINOIS** |
| | ) **CONSUMER FRAUD ACT, 815 ILCS** |
| v. | ) **505/1** |
| | ) |
| VIZIO, INC., | ) **CLASS ACTION** |
| | ) |
| Defendant. | ) **DEMAND FOR JURY TRIAL** |
| | ) |
| | ) |

1
2
3
4
5
6

Plaintiff Andrew Schwartz ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant VIZIO, Inc. ("Defendant" or "Vizio").  Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

7
8
9
10
11
12

## NATURE OF THE ACTION

1.      This is a class action against Defendant for falsely and misleadingly concealing the fact that its televisions use significantly more energy than the EnergyGuide labeling and advertising for those televisions indicate, thereby increasing purchasers' electricity costs.

13
14
15
16
17
18
19
20
21
22

2.      Defendant's televisions are designed to implement certain energy saving features when operating the television in default mode in order to pass testing criteria needed to obtain a low energy rating for its televisions.  However, while the Vizio's televisions are programmed to apply these energy-saving features during testing for energy consumption, the primary energy-saving features are automatically disabled without warning whenever the factory-default picture settings are changed. Unknown to consumers, any change to the default settings on their television, deactivates the main energy saving features and increases the energy consumption of their televisions significantly, leading to increased yearly electrical bills.

23
24
25

3.      Independent laboratory testing has revealed this deceptive feature, and has shown that the average consumer will spend an extra $100 to $200 in energy bills than advertised over the standard ten-year lifetime of a television.

26
27
28

4.      As a direct and proximate result of Defendant's false and misleading advertising claims and marketing practices, Plaintiff and the members of the Classes, as defined herein, purchased the televisions and paid more for them

1 because they were falsely led to believe that the televisions used less energy than

2 claimed.  Additionally, Plaintiff and members of the Classes have paid more in

3 their energy bills than they would have, had the televisions used the energy levels

4 described in the EnergyGuide labels and on Defendant's website.

5       5. Plaintiff seeks relief in this action individually and on a class-wide

6 basis for breach of warranty, unjust enrichment, and for violations of the Illinois

7 Consumer Fraud Act, 815 ILCS 505/1, *et seq.*

8 **THE PARTIES**

9       6. Plaintiff Andrew Schwartz is a citizen of the State of Illinois, residing

10 in Cook County.  Plaintiff Schwartz has purchased a Vizio M55-C2, one of the

11 affected models.   Plaintiff's television, as part of its "EnergyGuide" label

12 contained an "Energy Star" badge, as shown *infra*.  Plaintiff changed the factory

13 default picture settings shortly after activating the television.  Had Plaintiff

14 Schwartz known about Vizio's deceptive conduct, Plaintiff would not have

15 purchased the television, or he would have paid less for it.  Plaintiff suffered an

16 injury in fact and lost money as a result of Defendant's deceptive, misleading,

17 false, unfair, and fraudulent practices, as described herein.

18       7. Defendant Vizio, Inc. is a privately-held corporation with its

19 headquarters in Irvine, California.  Defendant has been and still is engaged in

20 the business of distributing, marketing, and selling televisions throughout the

21 United States and this District.  In July 2016, Vizio announced that it would be

22 acquired by Leshi Internet and Information Technology ("LeEco"), a Chinese

23 company, headquartered in Beijing, People's Republic of China.

24 **JURISDICTION AND VENUE**

25       8. This Court has jurisdiction over this action pursuant to 28 U.S.C. §

26 1332(d)  because there are more than 100 Class members, the aggregate amount in

27 controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at

28 least one Class member is a citizen of a state different from either Defendant.

1
2
3
4
5
6

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, Defendant is headquartered in this District, and Defendant does business throughout this District, including selling and distributing televisions which featured ("ABC") between 2011 and the present ("the Products") at issue in this District.

7

### ADDITIONAL FACTUAL ALLEGATIONS

8
9
10
11
12
13

10.     News reports from Europe in October 2015 first reported that some Samsung televisions in Europe used less energy during official testing conditions than they do in real world use[1].  These tests were conducted by an EU-funded independent laboratory.  The reports indicated that several countries, including Sweden and the UK, had complained to the European Commission about this fact in recent years.

14
15
16
17
18

11.     On September 21, 2016, the National Resources Defense Council released a study (hereinafter, "The NRDC Report") on American televisions made by various manufacturers including Vizio[2].  The NRDC reported that as part of its independent testing, done in partnership with Ecos Research, that the same characteristics were present in American televisions as the European ones.

19
20
21

12.     Vizio televisions have a feature called "Auto Brightness Control" ("ABC") which purports to automatically adjust the television screen's brightness base on the ambient light in the room.  However, this feature is easily and almost

22
23

24
25

[1] *See* Arthur Nelson, *Samsung TVs Appear Less Energy Efficient in Real Life Than in Tests,* THE GUARDIAN (Oct. 1, 2015), https://www.theguardian.com/environment/2015/oct/01/samsung-tvs-appear-more-energy-efficient-in-tests-than-in-real-life (last visited Oct. 12, 2016).

26
27
28

[2] *See The Secret Costs of manufactuers Exploiting Loopholes in the Government's T.V. Energy Tests: $1.2 Billion for Consumers & Millions of Tons of Pollution,* NRDC, https://www.nrdc.org/sites/default/files/costs-manufacturers-exploiting-loopholes-tv-energy-test-report.pdf (last visited Oct. 11, 2016).

1   always unintentionally disabled by the consumer merely by adjusting the factory
2   default setting.

3       13.    Testing done on the Plaintiff's model, for example, showed that the
4   disabling of ABC LED to 91% increase in power consumption by the television.

5       14.    Vizio first released the ABC feature in to the U.S. market in 2011, at
6   the time referred to as an "Ambient Light Sensor"[3].

7       15.    2011 is also the first year that the Federal Trade Commission began
8   requiring all new televisions to display EnergyGuide labels on televisions for sale[4].

9       16.    The NRDC Report also states that when the default picture setting is
10  changed in Vizio televisions, automatic brightness control, which saves energy, is
11  eliminated.  NRDC Report at 6.

12      17.    The NRDC Report estimates that the average, across-the-board
13  additional cost of owning a Vizio television which is not using ABC is
14  approximately $9 per unit per year more than the level calculated if taking
15  Defendant's reported figures.  NRDC report at 29.  While the exact numbers for
16  the M55-C2 model are in the sole control of Vizio, an extra $9 per year would
17  make the Vizio a full third more expensive to operate than the EnergyGuide label
18  would suggest.  Moreover, a 91% increase in average energy consumption for a
19  television not using ABC, as specifically identified in The NRDC Report for the
20  Vizio M55-C2, would lead to an average $24-$25 in increased energy use per year
21  than what the EnergyGuide label would suggest.  Below is a picture of the
22  EnergyGuide label for the M55-C2 taken from Vizio's website:

23

24

25  [3] *See Edge Lit Razor LED LCD HDTV with VIZIO Internet Apps., User Manual,* VIZIO,
26  http://cdn.vizio.com/manuals/kb/legacy/m550sv.pdf (last visited Oct. 12, 2016).

27  [4] *See Starting in 2011, FTC will Require EnergyGuide Labels for Televisions,* FEDERAL TRADE
    COMMISSION, https://www.ftc.gov/news-events/press-releases/2010/10/starting-2011-ftc-will-require-
28  energyguide-labels-televisions (last visited Oct. 12, 2016).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18
19
20
21
22
23
24
25
26
27
28

18.    Additionally, several of Defendant's televisions qualified for the ENERGY STAR ("Energy Star") badge during testing, such as the one shown on the photo of the EnergyGuide label for the Vizio M55-C2 *supra*, which is a badge given to certified models of televisions which, on average, are 25% more energy-efficient than conventional models[5].    Energy Star-certified models have a competitive advantage to other televisions and are more desirable to consumers. On information and belief, Energy Star-certified televisions with the ABC feature will not qualify for this certification when used under real world conditions where

---

[5] *See* ENERGY STAR, https://www.energystar.gov/products/electronics/televisions (last visited Oct. 12, 2016).

1  the ABC is automatically and surreptitiously deactivated whenever the default
2  settings are adjusted.

3      19.    Any consumer who purchases or purchased the Products would have
4  seen the same prominent yellow "EnergyGuide" label on the store display model
5  or on the Defendant's or on an online retailer's website, displayed according to
6  federal Department of Energy regulations.

7      20.    Similarly, The NRDC Report notes that Oregon, California, and
8  Connecticut have mandatory energy efficiency standards for televisions, which
9  Defendant's televisions likely would not have met but for the Defendant's
10  implementation of test defeat tactics.

11  ## CLASS ACTION ALLEGATIONS

12      21.    Plaintiff brings this action as a class action under Federal Rule of
13  Civil Procedure ("Fed. R. Civ. P.") 23 on behalf of all persons in the United States
14  who, within the relevant statute of limitations period, purchased televisions
15  manufactured by Defendant between 2011 and the present, which featured ABC
16  (the "Class").

17      22.    Plaintiff seeks to represent a subclass defined as all members of the
18  Class who purchased the Product in Illinois (the "Illinois Subclass").

19      23.    Additionally, Plaintiff seeks to represent a subclass defined as all
20  members of the Class who purchased a product with an "Energy Star" badge (the
21  "Energy Star Subclass").

22      24.    Excluded from the Class and Illinois Subclass are the Defendant, the
23  officers and directors of the Defendant at all relevant times, members of their
24  immediate families and their legal representatives, heirs, successors or assigns, any
25  entity in which Defendant has or had a controlling interest, and any judge assigned
26  to the case.

27      25.    Also excluded from the Class and Illinois Subclass are persons or
28  entities that purchased the Product for purposes of resale.

1    26.    Plaintiff is a member of the Class and all Subclasses he seeks to

2    represent.

3    27.    The Class, the Illinois Subclass, and the Energy Star Subclass are so

4    numerous that joinder of all members is impractical.  Although Plaintiff does not

5    yet know the exact size of the Class, the products are sold in retail locations

6    throughout the United States, and on information and belief, members of the Class

7    number in the hundreds of thousands, if not millions.

8    28.    The Class, the Illinois Subclass, and the Energy Star Subclass are

9    ascertainable because their members can be identified by objective criteria – the

10   purchase of Defendant's Product in the United States during the statute of

11   limitations period.  Individual notice can be provided to Class members "who can

12   be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

13   29.    There are numerous questions of law and fact common to the Class

14   which predominates over any individual actions or issues, including but not limited

15   to whether the labeling and marketing of the Product was false and misleading.

16   30.    Plaintiff's claims are typical of the claims of the members of the Class

17   as all members of the Class are similarly affected by Defendant's wrongful

18   conduct.   Plaintiff has no interests antagonistic to the interests of the other

19   members of the Class.  Plaintiff and all members of the Class have sustained

20   economic injury arising out of Defendant's violations of common and statutory law

21   as alleged herein.

22   31.    Plaintiff is an adequate representative of the Class because his

23   interests do not conflict with the interests of the Class members he seeks to

24   represent, he has retained counsel that is competent and experienced in prosecuting

25   class actions, and he intends to prosecute this action vigorously.  The interests of

26   the Class members will be fairly and adequately protected by Plaintiff and his

27   counsel.

28

1
2
3
4
5
6
7
8
9
10
11
12

32.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims are consistently adjudicated.

13

## FIRST CLAIM FOR RELIEF

14

### (Breach of Express Warranty)

15
16

33.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

17
18

34.    Plaintiff brings this Count individually and on behalf of the members of the Class and the Illinois Subclass.

19
20
21
22
23

35.    As noted above, Defendant knowingly designed its products so that certain energy-saving features are activated during energy consumption testing in order to obtain favorable EnergyGuide ratings and labels, but these same energy-saving features are automatically deactivated without the knowledge of the consumer whenever the default settings are changed.

24
25
26
27

36.    Defendant prominently placed or caused to be placed "EnergyGuide" labels on all floor models of televisions sold by them in stores.  In addition, Defendant prominently placed or caused to be placed "EnergyGuide" labels for all affected models conspicuously on their and retailers' websites for those models so

28

1   consumers could view average energy consumption standards for each of the
2   affected models.

3          37.     Defendant's affirmations of fact and promises made to Plaintiff and
4   the Class and the Illinois Subclass on the Product labels became part of the basis of
5   the bargain between Defendant on the one hand, and Plaintiff and the Class and the
6   Illinois Subclass members on the other, thereby creating express warranties that the
7   Product would conform to Defendant's affirmations of fact, representations,
8   promises, and descriptions.

9          38.     Defendant breached its express warranties because the Products, in
10  fact, consume energy at much higher rates than those purported on the
11  EnergyGuide labels.

12         39.     Defendant's own intentional conduct in using ABC to circumvent the
13  testing standards for energy consumption for use in EnergyGuide labeling put
14  Defendant on actual notice that they have breached the express warranty regarding
15  energy consumption.

16         40.     Because the Defendant intentionally designed its Products to disable
17  the energy-saving features whenever any adjustment-no matter how slight-is made
18  to the factory default viewing settings without notice to the purchaser, Defendant
19  had or should have had actual knowledge of the defect.  This defect, a test defeat
20  feature, by design, affected all of the Products, including the specific item
21  purchased by the Plaintiff.  Additionally, Defendant either knew or should have
22  known of the results of the independent laboratory tests discussed above which
23  revealed that Defendant's Products, including the specific television model
24  purchased by Plaintiff, consumed excess energy when operated under real world
25  conditions, which was made public prior to the filing of this Complaint.

26         41.     Plaintiff and Class and Illinois Subclass members were injured as a
27  direct and proximate result of Defendant's breach because: (a) they would not have
28  purchased the Product or would not have paid as much for the Products if they had

1  known the true facts; (b) they purchased and paid more for the Products due to the

2  mislabeling;  (c) the Products did not have the characteristics, quality, or value as

3  promised, and (d) the Products caused Plaintiff and Class members to spend more

4  on electricity costs than they would have, had the Products actually performed

5  according to the EnergyGuide labels.

6  ## SECOND CLAIM FOR RELIEF

7  ## (ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS

8  ## PRACTICES ACT, 815 ILCS 505/1 *ET SEQ.*)

9  42.    Plaintiff repeats the allegations contained in the paragraphs above as if

10  fully set forth herein. Plaintiff brings this Count individually and on behalf of the

11  members of the Illinois Subclass.

12  43.    As alleged herein, Plaintiff has suffered injury in fact and lost money

13  or property as a result of Defendant's conduct because he purchased the Products

14  which Defendant falsely claimed met the average energy uses of the prominently-

15  displayed "EnergyGuide" label on the floor model of the Products.

16  44.    At all times relevant hereto, the sale of the Products in Illinois were

17  governed by the Illinois Consumer Fraud and Deceptive Business Practices Act

18  ("ICFA"), 815 ILCS 505/1 *et seq.*

19  45.    The ICFA is a regulatory and remedial statute intended to protect

20  consumers, including Plaintiff and the Illinois Subclass, against unfair or deceptive

21  acts or practices.

22  46.    Specifically, Section 2 of the ICFA prohibits deceptive acts or

23  practices, which are committed in the course of trade or commerce and with the

24  intent that others rely upon. *See* 815 ILCS 505/2, which states:

25  "Unfair methods of competition and unfair or deceptive acts

26  or practices, including but not limited to the use or employment of

27  any    deception,    fraud,    false    pretense,    false    promise,

28  misrepresentation or the concealment, suppression or omission of

1   any material fact, with intent that others rely upon the concealment,

2   suppression or omission of such material fact, or the use or

3   employment of any practice described in Section 2 of the 'Uniform

4   Deceptive Trade Practices Act,' approved August 5, 1965, in the

5   conduct of any trade or commerce are hereby declared unlawful

6   whether any person has in fact been misled, deceived or damaged

7   thereby."

8   47.    In addition, 815 ILCS 510/2(a)(5) of the Uniform Deceptive Trade

9   Practices Act states:

10       "A person engages in a deceptive trade practice when, in the

11       course of his or her business, vocation, or occupation, the person

12       . . . represents that goods or services have . . . characteristics . . .

13       uses, [or] benefits . . . that they do not have . . . ."

14   48.    The above-described unfair or deceptive acts or practices occurred in

15   the course of conduct involving trade or commerce, namely, the sale of goods to

16   Plaintiff and the Illinois Subclass.

17   49.    Defendant's practice of knowingly and unlawfully engaging in the

18   activity described above also constitutes "unfair" business acts or practices

19   because, *inter alia*, Defendant engaged in false advertising, which misrepresents

20   and omits material facts regarding the Products.

21   50.    Defendant's business acts or practices, therefore, offend an

22   established public policy, and Defendant engaged in immoral, unethical,

23   oppressive, and unscrupulous activities that are substantially injurious to

24   consumers, as alleged in detail previously. Therefore, Defendant's actions are

25   unfair or deceptive acts or practices prohibited by Chapter 2 of the ICFA. 815

26   ILCS 505/2.

27   51.    Defendant intended that Plaintiff and the Illinois Subclass rely on the

28   deceptive acts or practices described herein. Defendant's intent is evidenced by,

1  inter alia, the fact that Defendant used test defeat features in order to obtain

2  deceptive EnergyGuide labels for its TVs to make its Products appear more energy

3  efficient to consumers than they really were.

4       52.    Any consumer wishing to purchase the Products would have seen the

5  prominent yellow "EnergyGuide" label on the store display model or on

6  Defendant's or retailer's websites, displayed according to federal Department of

7  Energy regulations.

8       53.    Defendant's material misrepresentations and omissions described

9  above have caused harm to Plaintiff and other members of the Illinois Subclass.

10       54.    Plaintiff and the Illinois Subclass reserve the right to allege other

11  violations of law, which constitute other unlawful business acts or practices. Such

12  conduct is ongoing and continues to this date.

13       55.    Plaintiff and the other members of the Illinois Subclass have suffered

14  injury in fact and lost money as a result of these unlawful, unfair, and fraudulent

15  practices.

16       56.    Plaintiff and the other members of the Illinois Subclass would not

17  have purchased the Products or would have paid less for them had they known

18  about Defendant's deceptive conduct.  Plaintiff and members of the Illinois

19  Subclass also paid more for electricity costs than they would have had Defendant's

20  products performed as advertised.

21                   **THIRD CLAIM FOR RELIEF**

22                   **(Breach of Express Warranty)**

23       57.    Plaintiff repeats the allegations contained in the paragraphs above as if

24  fully set forth herein. Plaintiff brings this Count individually and on behalf of the

25  members of the Energy Star Subclass.

26       58.    Defendant prominently placed or caused to be placed "EnergyGuide"

27  labels with "Energy Star"-certified badges on all "Energy Star"-certified

28  televisions on the floor models of those sold by them in stores.  In addition,

1   Defendant prominently placed or caused to be placed "EnergyGuide" labels with
2   "Energy Star"-certified badges for all affected models conspicuously on their and
3   retailers' websites for those models so consumers could see that the "Energy Star"
4   Subclass televisions were "Energy Star"-certified.

5          59.    Defendant's affirmations of fact and promises made to Plaintiff and
6   the Energy Star Subclass on the Product labels became part of the basis of the
7   bargain between Defendant on the one hand, and Plaintiff and the Class and
8   Illinois Subclass members on the other, thereby creating express warranties that the
9   Product would conform to Defendant's affirmations of fact, representations,
10  promises, and descriptions.

11         60.    Defendant breached its express warranties because the Products, in
12  fact, do not meet the standards for "Energy Star" certification.

13         61.    Defendant's own intentional conduct in using ABC to circumvent the
14  testing standards for energy consumption for use in "Energy Star" certification put
15  Defendant on actual notice that they have breached the express warranty regarding
16  energy consumption.

17         62.    Because the Defendant intentionally designed its Products to disable
18  the energy-saving features whenever adjustment is made to the factory default
19  viewing settings without notice to the purchaser, Defendant had or should have had
20  actual knowledge of the defect.  This defect, a test defeat feature, by design,
21  affected all of the Products, including the specific item purchased by the Plaintiff.
22  Additionally, Defendant either knew or should have known of the results of the
23  independent laboratory tests discussed above which revealed that Defendant's
24  Products, including the specific television model purchased by Plaintiff, consumed
25  excess energy when operated under real world conditions, which was made public
26  prior to the filing of this Complaint.

27         63.    Plaintiff and Energy Star Subclass members were injured as a direct
28  and proximate result of Defendant's breach because: (a) they would not have

1  purchased the Product or would not have paid as much for the Products if they had

2  known the true facts; (b) they purchased and paid more for the Products due to the

3  mislabeling;  (c) the Products did not have the characteristics, quality, or value as

4  promised, and (d) the Products caused Plaintiff and Energy Star Subclass members

5  to spend more on electricity costs than they would have had the Products actually

6  performed according as "Energy Star"-certified products.

### FOURTH CLAIM FOR RELIEF

### (UNJUST ENRICHMENT PLED IN THE ALTERNATIVE TO THE WARRANTY CLAIMS)

10  64.    Plaintiff repeats the allegations contained in the paragraphs above as if

11  fully set forth herein.

12  65.    Plaintiff brings this Count individually and on behalf of the members

13  of the Class, the Illinois Subclass, and the Energy Star Subclass.

14  66.    Plaintiff and members of the Class and Illinois Subclass conferred

15  benefits on Defendant by purchasing the Product.

16  67.    Defendant has been unjustly enriched in retaining revenues derived

17  from Plaintiff's and Class, Illinois Subclass, and Energy Star Subclass members'

18  purchases of the Product.  Retention of that revenue under these circumstances is

19  unjust and inequitable because Defendant misrepresented facts concerning the

20  characteristics, qualities, and value of the Product and caused Plaintiff and Class,

21  Illinois Subclass, and Energy Star Subclass members to purchase the Products and

22  to pay more for the Products, which they would not have done had the true facts

23  been known.

24  68.    Because Defendant's retention of the non-gratuitous benefits

25  conferred on it by Plaintiff and members of the Class, Illinois Subclass, and Energy

26  Star Subclass is unjust and inequitable, Defendant must pay restitution to Plaintiff

27  and members of the Class for its unjust enrichment, as ordered by the Court.

28

1   **WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

2   A.   Determining that this action is a proper class action;

3   B.   For an order declaring that the Defendant's conduct violates the

4   statutes and common law referenced herein;

5   C.   Awarding compensatory and punitive damages in favor of Plaintiff,

6   members of the Class, the Illinois Subclass, and the Energy Star Subclass against

7   Defendant for all damages sustained as a result of Defendant's wrongdoing, in an

8   amount to be proven at trial, including interest thereon;

9   D.   Awarding injunctive relief against Defendant to prevent Defendant

10  from continuing their ongoing unfair, unconscionable, and/or deceptive acts and

11  practices;

12  E.   For an order of restitution and/or disgorgement and all other forms of

13  equitable monetary relief;

14  F.   Awarding Plaintiff and members of the Class, the Illinois Subclass,

15  and the Energy Star Subclass their reasonable costs and expenses incurred in this

16  action, including attorney's fees; and

17  G.   Awarding such other and further relief as the Court may deem just and

18  proper.

19                          **JURY DEMAND**

20  Plaintiff hereby demands a trial by jury on all claims so triable in this action.

21

22  Dated: October 12, 2016          **WOLF HALDENSTEIN ADLER**

23                                   **FREEMAN & HERZ LLP**

24                                   By:   *Betsy C. Manifold*

25                                         BETSY C. MANIFOLD

26                                   BETSY C. MANIFOLD

27                                   manifold@whafh.com
                                     RACHELE R. RICKERT

28                                   rickert@whafh.com

- 15 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRITTANY N. DEJONG
dejong@whafh.com
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:  619/234-4599

**WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP**
THOMAS H. BURT
burt@whafh.com
270 Madison Avenue
New York, NY  10016
Telephone:  212/545-4600
Facsimile:  212/545-4653

**WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLC**
THEODORE B. BELL
tbell@whafh.com
CARL MALMSTROM
malmstrom@whafh.com
One Dearborn Street, Suite 2122
Chicago, IL  60603
Telephone:  312/984-0000
Facsimile:  312/212-4401

*Counsel for Plaintiffs and the [Proposed]
Class*

VIZIO:23403