BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
BRITTANY N. DEJONG (258766)
dejong@whafh.com
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLP**
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:  619/234-4599

*Counsel for Plaintiffs and the [Proposed] Class*

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ANDREW SCHWARTZ, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>VIZIO, INC.,<br><br>                    Defendant. | Case No.:<br><br>**COMPLAINT FOR BREACH OF EXPRESS WARRANTY AND VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT, 815 ILCS 505/1**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Andrew Schwartz ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant VIZIO, Inc. ("Defendant" or "Vizio").  Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     This is a class action against Defendant for falsely and misleadingly concealing the fact that its televisions use significantly more energy than the EnergyGuide labeling and advertising for those televisions indicate, thereby increasing purchasers' electricity costs.

2.     Defendant's televisions are designed to implement certain energy saving features when operating the television in default mode in order to pass testing criteria needed to obtain a low energy rating for its televisions.  However, while the Vizio's televisions are programmed to apply these energy-saving features during testing for energy consumption, the primary energy-saving features are automatically disabled without warning whenever the factory-default picture settings are changed. Unknown to consumers, any change to the default settings on their television, deactivates the main energy saving features and increases the energy consumption of their televisions significantly, leading to increased yearly electrical bills.

3.     Independent laboratory testing has revealed this deceptive feature, and has shown that the average consumer will spend an extra $100 to $200 in energy bills than advertised over the standard ten-year lifetime of a television.

4.     As a direct and proximate result of Defendant's false and misleading advertising claims and marketing practices, Plaintiff and the members of the Classes, as defined herein, purchased the televisions and paid more for them

- 1 -

because they were falsely led to believe that the televisions used less energy than claimed. Additionally, Plaintiff and members of the Classes have paid more in their energy bills than they would have, had the televisions used the energy levels described in the EnergyGuide labels and on Defendant's website.

5. Plaintiff seeks relief in this action individually and on a class-wide basis for breach of warranty, unjust enrichment, and for violations of the Illinois Consumer Fraud Act, 815 ILCS 505/1, *et seq.*

<strong><u>THE PARTIES</u></strong>

6. Plaintiff Andrew Schwartz is a citizen of the State of Illinois, residing in Cook County. Plaintiff Schwartz has purchased a Vizio M55-C2, one of the affected models. Plaintiff's television, as part of its "EnergyGuide" label contained an "Energy Star" badge, as shown *infra*. Plaintiff changed the factory default picture settings shortly after activating the television. Had Plaintiff Schwartz known about Vizio's deceptive conduct, Plaintiff would not have purchased the television, or he would have paid less for it. Plaintiff suffered an injury in fact and lost money as a result of Defendant's deceptive, misleading, false, unfair, and fraudulent practices, as described herein.

7. Defendant Vizio, Inc. is a privately-held corporation with its headquarters in Irvine, California. Defendant has been and still is engaged in the business of distributing, marketing, and selling televisions throughout the United States and this District. In July 2016, Vizio announced that it would be acquired by Leshi Internet and Information Technology ("LeEco"), a Chinese company, headquartered in Beijing, People's Republic of China.

<strong><u>JURISDICTION AND VENUE</u></strong>

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from either Defendant.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, Defendant is headquartered in this District, and Defendant does business throughout this District, including selling and distributing televisions which featured ("ABC") between 2011 and the present ("the Products") at issue in this District.

## ADDITIONAL FACTUAL ALLEGATIONS

10.     News reports from Europe in October 2015 first reported that some Samsung televisions in Europe used less energy during official testing conditions than they do in real world use[1].  These tests were conducted by an EU-funded independent laboratory.  The reports indicated that several countries, including Sweden and the UK, had complained to the European Commission about this fact in recent years.

11.     On September 21, 2016, the National Resources Defense Council released a study (hereinafter, "The NRDC Report") on American televisions made by various manufacturers including Vizio[2].  The NRDC reported that as part of its independent testing, done in partnership with Ecos Research, that the same characteristics were present in American televisions as the European ones.

12.     Vizio televisions have a feature called "Auto Brightness Control" ("ABC") which purports to automatically adjust the television screen's brightness base on the ambient light in the room.  However, this feature is easily and almost

---

[1] *See* Arthur Nelson, *Samsung TVs Appear Less Energy Efficient in Real Life Than in Tests,* THE GUARDIAN (Oct. 1, 2015), https://www.theguardian.com/environment/2015/oct/01/samsung-tvs-appear-more-energy-efficient-in-tests-than-in-real-life (last visited Oct. 12, 2016).

[2] *See The Secret Costs of manufactuers Exploiting Loopholes in the Government's T.V. Energy Tests: $1.2 Billion for Consumers & Millions of Tons of Pollution,* NRDC, https://www.nrdc.org/sites/default/files/costs-manufacturers-exploiting-loopholes-tv-energy-test-report.pdf (last visited Oct. 11, 2016).

- 3 -

1   always unintentionally disabled by the consumer merely by adjusting the factory
2   default setting.

3          13.    Testing done on the Plaintiff's model, for example, showed that the
4   disabling of ABC LED to 91% increase in power consumption by the television.

5          14.    Vizio first released the ABC feature in to the U.S. market in 2011, at
6   the time referred to as an "Ambient Light Sensor"[3].

7          15.    2011 is also the first year that the Federal Trade Commission began
8   requiring all new televisions to display EnergyGuide labels on televisions for sale[4].

9          16.    The NRDC Report also states that when the default picture setting is
10  changed in Vizio televisions, automatic brightness control, which saves energy, is
11  eliminated.  NRDC Report at 6.

12         17.    The NRDC Report estimates that the average, across-the-board
13  additional cost of owning a Vizio television which is not using ABC is
14  approximately $9 per unit per year more than the level calculated if taking
15  Defendant's reported figures.  NRDC report at 29.  While the exact numbers for
16  the M55-C2 model are in the sole control of Vizio, an extra $9 per year would
17  make the Vizio a full third more expensive to operate than the EnergyGuide label
18  would suggest.  Moreover, a 91% increase in average energy consumption for a
19  television not using ABC, as specifically identified in The NRDC Report for the
20  Vizio M55-C2, would lead to an average $24-$25 in increased energy use per year
21  than what the EnergyGuide label would suggest.  Below is a picture of the
22  EnergyGuide label for the M55-C2 taken from Vizio's website:

23

24

25   [3] *See Edge Lit Razor LED LCD HDTV with VIZIO Internet Apps., User Manual,* VIZIO,
26   http://cdn.vizio.com/manuals/kb/legacy/m550sv.pdf (last visited Oct. 12, 2016).

27   [4] *See Starting in 2011, FTC will Require EnergyGuide Labels for Televisions,* FEDERAL TRADE
     COMMISSION, https://www.ftc.gov/news-events/press-releases/2010/10/starting-2011-ftc-will-require-
28   energyguide-labels-televisions (last visited Oct. 12, 2016).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



18.     Additionally, several of Defendant's televisions qualified for the ENERGY STAR ("Energy Star") badge during testing, such as the one shown on the photo of the EnergyGuide label for the Vizio M55-C2 *supra*, which is a badge given to certified models of televisions which, on average, are 25% more energy-efficient than conventional models[5].   Energy Star-certified models have a competitive advantage to other televisions and are more desirable to consumers. On information and belief, Energy Star-certified televisions with the ABC feature will not qualify for this certification when used under real world conditions where

---

[5] *See* ENERGY STAR, https://www.energystar.gov/products/electronics/televisions (last visited Oct. 12, 2016).

1  the ABC is automatically and surreptitiously deactivated whenever the default
2  settings are adjusted.

3      19.    Any consumer who purchases or purchased the Products would have
4  seen the same prominent yellow "EnergyGuide" label on the store display model
5  or on the Defendant's or on an online retailer's website, displayed according to
6  federal Department of Energy regulations.

7      20.    Similarly, The NRDC Report notes that Oregon, California, and
8  Connecticut have mandatory energy efficiency standards for televisions, which
9  Defendant's televisions likely would not have met but for the Defendant's
10 implementation of test defeat tactics.

11                    **CLASS ACTION ALLEGATIONS**

12     21.    Plaintiff brings this action as a class action under Federal Rule of
13 Civil Procedure ("Fed. R. Civ. P.") 23 on behalf of all persons in the United States
14 who, within the relevant statute of limitations period, purchased televisions
15 manufactured by Defendant between 2011 and the present, which featured ABC
16 (the "Class").

17     22.    Plaintiff seeks to represent a subclass defined as all members of the
18 Class who purchased the Product in Illinois (the "Illinois Subclass").

19     23.    Additionally, Plaintiff seeks to represent a subclass defined as all
20 members of the Class who purchased a product with an "Energy Star" badge (the
21 "Energy Star Subclass").

22     24.    Excluded from the Class and Illinois Subclass are the Defendant, the
23 officers and directors of the Defendant at all relevant times, members of their
24 immediate families and their legal representatives, heirs, successors or assigns, any
25 entity in which Defendant has or had a controlling interest, and any judge assigned
26 to the case.

27     25.    Also excluded from the Class and Illinois Subclass are persons or
28 entities that purchased the Product for purposes of resale.

26.     Plaintiff is a member of the Class and all Subclasses he seeks to represent.

27.     The Class, the Illinois Subclass, and the Energy Star Subclass are so numerous that joinder of all members is impractical.  Although Plaintiff does not yet know the exact size of the Class, the products are sold in retail locations throughout the United States, and on information and belief, members of the Class number in the hundreds of thousands, if not millions.

28.     The Class, the Illinois Subclass, and the Energy Star Subclass are ascertainable because their members can be identified by objective criteria – the purchase of Defendant's Product in the United States during the statute of limitations period.  Individual notice can be provided to Class members "who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

29.     There are numerous questions of law and fact common to the Class which predominates over any individual actions or issues, including but not limited to whether the labeling and marketing of the Product was false and misleading.

30.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendant's wrongful conduct.  Plaintiff has no interests antagonistic to the interests of the other members of the Class.  Plaintiff and all members of the Class have sustained economic injury arising out of Defendant's violations of common and statutory law as alleged herein.

31.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained counsel that is competent and experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of the Class members will be fairly and adequately protected by Plaintiff and his counsel.

32.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims are consistently adjudicated.

## FIRST CLAIM FOR RELIEF

### (Breach of Express Warranty)

33.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

34.     Plaintiff brings this Count individually and on behalf of the members of the Class and the Illinois Subclass.

35.     As noted above, Defendant knowingly designed its products so that certain energy-saving features are activated during energy consumption testing in order to obtain favorable EnergyGuide ratings and labels, but these same energy-saving features are automatically deactivated without the knowledge of the consumer whenever the default settings are changed.

36.     Defendant prominently placed or caused to be placed "EnergyGuide" labels on all floor models of televisions sold by them in stores. In addition, Defendant prominently placed or caused to be placed "EnergyGuide" labels for all affected models conspicuously on their and retailers' websites for those models so

consumers could view average energy consumption standards for each of the affected models.

37.    Defendant's affirmations of fact and promises made to Plaintiff and the Class and the Illinois Subclass on the Product labels became part of the basis of the bargain between Defendant on the one hand, and Plaintiff and the Class and the Illinois Subclass members on the other, thereby creating express warranties that the Product would conform to Defendant's affirmations of fact, representations, promises, and descriptions.

38.    Defendant breached its express warranties because the Products, in fact, consume energy at much higher rates than those purported on the EnergyGuide labels.

39.    Defendant's own intentional conduct in using ABC to circumvent the testing standards for energy consumption for use in EnergyGuide labeling put Defendant on actual notice that they have breached the express warranty regarding energy consumption.

40.    Because the Defendant intentionally designed its Products to disable the energy-saving features whenever any adjustment-no matter how slight-is made to the factory default viewing settings without notice to the purchaser, Defendant had or should have had actual knowledge of the defect.  This defect, a test defeat feature, by design, affected all of the Products, including the specific item purchased by the Plaintiff.  Additionally, Defendant either knew or should have known of the results of the independent laboratory tests discussed above which revealed that Defendant's Products, including the specific television model purchased by Plaintiff, consumed excess energy when operated under real world conditions, which was made public prior to the filing of this Complaint.

41.    Plaintiff and Class and Illinois Subclass members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased the Product or would not have paid as much for the Products if they had

known the true facts; (b) they purchased and paid more for the Products due to the mislabeling;  (c) the Products did not have the characteristics, quality, or value as promised, and (d) the Products caused Plaintiff and Class members to spend more on electricity costs than they would have, had the Products actually performed according to the EnergyGuide labels.

## SECOND CLAIM FOR RELIEF

## (ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1 *ET SEQ.*)

42.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein. Plaintiff brings this Count individually and on behalf of the members of the Illinois Subclass.

43.    As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Defendant's conduct because he purchased the Products which Defendant falsely claimed met the average energy uses of the prominently-displayed "EnergyGuide" label on the floor model of the Products.

44.    At all times relevant hereto, the sale of the Products in Illinois were governed by the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq*.

45.    The ICFA is a regulatory and remedial statute intended to protect consumers, including Plaintiff and the Illinois Subclass, against unfair or deceptive acts or practices.

46.    Specifically, Section 2 of the ICFA prohibits deceptive acts or practices, which are committed in the course of trade or commerce and with the intent that others rely upon. *See* 815 ILCS 505/2, which states:

> "Unfair methods of competition and unfair or deceptive acts
> or practices, including but not limited to the use or employment of
> any    deception,    fraud,    false    pretense,    false    promise,
> misrepresentation or the concealment, suppression or omission of

any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act,' approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby."

47.    In addition, 815 ILCS 510/2(a)(5) of the Uniform Deceptive Trade Practices Act states:

"A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person . . . represents that goods or services have . . . characteristics . . . uses, [or] benefits . . . that they do not have . . . ."

48.    The above-described unfair or deceptive acts or practices occurred in the course of conduct involving trade or commerce, namely, the sale of goods to Plaintiff and the Illinois Subclass.

49.    Defendant's practice of knowingly and unlawfully engaging in the activity described above also constitutes "unfair" business acts or practices because, *inter alia*, Defendant engaged in false advertising, which misrepresents and omits material facts regarding the Products.

50.    Defendant's business acts or practices, therefore, offend an established public policy, and Defendant engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers, as alleged in detail previously. Therefore, Defendant's actions are unfair or deceptive acts or practices prohibited by Chapter 2 of the ICFA. 815 ILCS 505/2.

51.    Defendant intended that Plaintiff and the Illinois Subclass rely on the deceptive acts or practices described herein. Defendant's intent is evidenced by,

inter alia, the fact that Defendant used test defeat features in order to obtain deceptive EnergyGuide labels for its TVs to make its Products appear more energy efficient to consumers than they really were.

52.     Any consumer wishing to purchase the Products would have seen the prominent yellow "EnergyGuide" label on the store display model or on Defendant's or retailer's websites, displayed according to federal Department of Energy regulations.

53.     Defendant's material misrepresentations and omissions described above have caused harm to Plaintiff and other members of the Illinois Subclass.

54.     Plaintiff and the Illinois Subclass reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

55.     Plaintiff and the other members of the Illinois Subclass have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

56.     Plaintiff and the other members of the Illinois Subclass would not have purchased the Products or would have paid less for them had they known about Defendant's deceptive conduct.   Plaintiff and members of the Illinois Subclass also paid more for electricity costs than they would have had Defendant's products performed as advertised.

## THIRD CLAIM FOR RELIEF
### (Breach of Express Warranty)

57.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein. Plaintiff brings this Count individually and on behalf of the members of the Energy Star Subclass.

58.     Defendant prominently placed or caused to be placed "EnergyGuide" labels with "Energy Star"-certified badges on all "Energy Star"-certified televisions on the floor models of those sold by them in stores.   In addition,

Defendant prominently placed or caused to be placed "EnergyGuide" labels with "Energy Star"-certified badges for all affected models conspicuously on their and retailers' websites for those models so consumers could see that the "Energy Star" Subclass televisions were "Energy Star"-certified.

59.    Defendant's affirmations of fact and promises made to Plaintiff and the Energy Star Subclass on the Product labels became part of the basis of the bargain between Defendant on the one hand, and Plaintiff and the Class and Illinois Subclass members on the other, thereby creating express warranties that the Product would conform to Defendant's affirmations of fact, representations, promises, and descriptions.

60.    Defendant breached its express warranties because the Products, in fact, do not meet the standards for "Energy Star" certification.

61.    Defendant's own intentional conduct in using ABC to circumvent the testing standards for energy consumption for use in "Energy Star" certification put Defendant on actual notice that they have breached the express warranty regarding energy consumption.

62.    Because the Defendant intentionally designed its Products to disable the energy-saving features whenever adjustment is made to the factory default viewing settings without notice to the purchaser, Defendant had or should have had actual knowledge of the defect.   This defect, a test defeat feature, by design, affected all of the Products, including the specific item purchased by the Plaintiff. Additionally, Defendant either knew or should have known of the results of the independent laboratory tests discussed above which revealed that Defendant's Products, including the specific television model purchased by Plaintiff, consumed excess energy when operated under real world conditions, which was made public prior to the filing of this Complaint.

63.    Plaintiff and Energy Star Subclass members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have

purchased the Product or would not have paid as much for the Products if they had known the true facts; (b) they purchased and paid more for the Products due to the mislabeling;  (c) the Products did not have the characteristics, quality, or value as promised, and (d) the Products caused Plaintiff and Energy Star Subclass members to spend more on electricity costs than they would have had the Products actually performed according as "Energy Star"-certified products.

## FOURTH CLAIM FOR RELIEF

## (UNJUST ENRICHMENT PLED IN THE ALTERNATIVE TO THE WARRANTY CLAIMS)

64.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

65.    Plaintiff brings this Count individually and on behalf of the members of the Class, the Illinois Subclass, and the Energy Star Subclass.

66.    Plaintiff and members of the Class and Illinois Subclass conferred benefits on Defendant by purchasing the Product.

67.    Defendant has been unjustly enriched in retaining revenues derived from Plaintiff's and Class, Illinois Subclass, and Energy Star Subclass members' purchases of the Product.  Retention of that revenue under these circumstances is unjust and inequitable because Defendant misrepresented facts concerning the characteristics, qualities, and value of the Product and caused Plaintiff and Class, Illinois Subclass, and Energy Star Subclass members to purchase the Products and to pay more for the Products, which they would not have done had the true facts been known.

68.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Class, Illinois Subclass, and Energy Star Subclass is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Class for its unjust enrichment, as ordered by the Court.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action;

B.    For an order declaring that the Defendant's conduct violates the statutes and common law referenced herein;

C.    Awarding compensatory and punitive damages in favor of Plaintiff, members of the Class, the Illinois Subclass, and the Energy Star Subclass against Defendant for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including interest thereon;

D.     Awarding injunctive relief against Defendant to prevent Defendant from continuing their ongoing unfair, unconscionable, and/or deceptive acts and practices;

E.    For an order of restitution and/or disgorgement and all other forms of equitable monetary relief;

F.    Awarding Plaintiff and members of the Class, the Illinois Subclass, and the Energy Star Subclass their reasonable costs and expenses incurred in this action, including  attorney's fees; and

G.    Awarding such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable in this action.

Dated:  October 12, 2016

                    **WOLF HALDENSTEIN ADLER**
                    **FREEMAN & HERZ LLP**

                    By: _____*Betsy C. Manifold*_____
                            BETSY C. MANIFOLD

                    BETSY C. MANIFOLD
                    manifold@whafh.com
                    RACHELE R. RICKERT
                    rickert@whafh.com

1   BRITTANY N. DEJONG
2   dejong@whafh.com
    750 B Street, Suite 2770
3   San Diego, CA 92101
    Telephone:  619/239-4599
4   Facsimile:   619/234-4599
5
6   **WOLF HALDENSTEIN ADLER**
      **FREEMAN & HERZ LLP**
7   THOMAS H. BURT
8   burt@whafh.com
    270 Madison Avenue
9   New York, NY  10016
    Telephone:   212/545-4600
10  Facsimile:   212/545-4653
11
12  **WOLF HALDENSTEIN ADLER**
      **FREEMAN & HERZ LLC**
13  THEODORE B. BELL
14  tbell@whafh.com
    CARL MALMSTROM
15  malmstrom@whafh.com
    One Dearborn Street, Suite 2122
16  Chicago, IL  60603
17  Telephone:   312/984-0000
    Facsimile:   312/212-4401
18
19
20  *Counsel for Plaintiffs and the [Proposed]*
    *Class*
21
22
23  VIZIO:23403
24
25
26
27
28